UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LEE CARDA, | ) | CIV.  04-5036-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| E.H. OFTEDAL & SONS, INC., a | ) | ORDER GRANTING |
| Montana corporation; JOHN DOE | ) | PLAINTIFF'S RENEWED |
| No. 1; Officer; JOE DOE No. 2, | ) | MOTIONS FOR SUMMARY |
| Officer; JOHN DOE No. 3, Officer; | ) | JUDGMENT AND DENYING |
| JOHN DOE No. 4, Officer; JOHN | ) | DEFENDANT'S MOTIONS TO |
| DOE No. 5, Officer; JOHN DOE | ) | RECONSIDER |
| No. 6, Project Manager; JOHN DOE | ) | |
| No. 7, Project Manager; JOHN DOE | ) | |
| No. 8, Superintendent; and JOHN | ) | |
| DOE No. 9, Superintendent; | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Lee Carda, previously moved for summary judgment as to

whether defendant E.H. Oftedal & Sons, Inc., (Oftedal) is an enterprise for

purposes of the Fair Labor Standards Act (FLSA), whether the executive

exemption applies to this case, and on Oftedal's barratry and breach of loyalty

counterclaims.  Because neither party submitted a statement of undisputed

material facts as is required by Local Rule 56.1(B), the court was unable to

determine whether there was a jury question as to any of Carda's claims.

Thus, the court denied the motion for summary judgment.  Carda also

previously moved in limine to preclude the introduction of evidence that he

secretly copied Oftedal documents.  The court granted Carda's motion in limine.  The court also previously granted Carda's motion to compel requests for admissions.

Carda now renews his motion for summary judgment.  Oftedal opposes the motion and moves to reconsider the court's order granting the motion in limine to preclude the introduction of evidence that Carda secretly copied files while he worked for Oftedal.  Oftedal also asks the court to reconsider its order to compel.  The court grants Carda's renewed motions for summary judgment and denies Oftedal's motion to reconsider.

## BACKGROUND

The evidence, viewed in the light most favorable to the nonmoving party, Oftedal, is:

Oftedal is a road construction company based in Miles City, Montana. Oftedal offered Carda a field engineer position in December of 2001, while he was an industrial management graduate student at South Dakota State University.  He was offered an annual salary of $41,000 per year, plus a yearly bonus, 401K plan, health insurance, life insurance, paid vacation, an out-of-town living allowance, and use of a company vehicle.  Carda was told that he would have to work overtime occasionally and would not receive overtime pay. Carda accepted the job offer and began working for Oftedal on May 20, 2002.

Oftedal assigned him to the Strawberry Hill construction project on Highway 385, near Deadwood, South Dakota.

The Oftedal management structure starts with the field engineer position, and progresses up to foreman, assistant superintendent, superintendent, estimator, and ultimately to the project manager, the top position. The field engineer is a management trainee who works as an assistant to the superintendent and the project manager on a particular construction project. A field engineer enters data into a computer, prepares reports, reviews work orders or other reports prepared by foremen, reviews time cards, and performs other clerical duties. The field engineer is also responsible for managing the field office, which includes ordering office supplies and forms, ensuring that the office equipment is working properly, and making sure that all the paperwork and invoices are properly sorted before sending them to the Miles City office.

Hal Fluglevand, the president of Oftedal, reviewed Carda's reports with Oftedal superintendents to minimize project expenses. For example, if a report showed that it was spending too much money using a particular construction machine, Fluglevand would substitute a cheaper machine and monitor the change in the next reports. If a report showed unusual expenses, Fluglevand would discuss it with Carda to determine whether the report was accurate. Fluglevand testified that a field engineer needs the ability to analyze

information rather than just enter numbers into a computer.  For example, the field engineer reviews timecards submitted by employees every day that showed how many hours they had worked.  The Strawberry Hill project had 100 employees, so there were 500 timecards to review each week.  If a timecard appeared to be questionable, Carda needed to use his judgment based on his understanding of the project and make sure that the proper amount was paid.

Oftedal superintendent Ken Mumbower testified that the field engineer "spends a lot of his day getting information and building a base for how a project will be built.  He'll spend a lot of his day working with the foremen, superintendents, sometimes on the phone with the project manager, to solve problems and help the flow of the project."  Carda ensured that the project had an adequate supply of construction materials, dealt with subcontractors, and made sure that every employee turned in a timecard.  Mumbower testified that Carda was the sole contact with Kip Johnson, the South Dakota Department of Transportation (DOT) inspector for the project.  Carda kept track of how much work had been done and billed the state accordingly.  For example, Carda measured how much of a wire-face wall had been built because Johnson had disputed the amount that the state owed Oftedal for its work.  Mumbower stated that Carda was responsible for inspecting supplies delivered for the wire-face wall and rejecting a shipment that was damaged.

Mumbower hired Chaska Weiscz as a field office clerk to assist Carda. She answered the phone, made copies, and did other secretarial work primarily for Carda. Carda supervised Weiscz, but Mumbower determined her work schedule and wages. Carda did not regularly supervise any other employee. Mumbower testified that he got angry with Carda when Carda told Weiscz to come work with him in the office on a Saturday. Mumbower thought that Carda should have been in the field that day and that neither of them should have been working in the office that day.

Mumbower stated that Carda had the authority to hire flaggers and laborers, under his direction. Oftedal hired almost every certified flagger that applied, but did not hire every laborer that applied. All hiring decisions had to be approved by Mumbower or a foreman, because Carda would not have known that a position needed to be filled unless an Oftedal manager told him. Carda testified that Mumbower told him to hire a tanker truck driver when one of its drivers quit without notice at the end of the workday. Mumbower told Carda to "have somebody in here in the morning." Carda had applications from three qualified drivers and immediately hired the first one that he was able to reach by phone. Carda testified that this was the only job interview he conducted at Oftedal, which consisted of calling the truck driver to tell him, "We got a position if you want it."

5

Carda testified that his main responsibility was preparing reports.  He entered job cost information into the computer and performed other miscellaneous tasks as needed.  Carda emailed the reports to Fluglevand.  Sometimes Fluglevand would notice that a cost figure seemed too high or too low, and would ask Carda to investigate it.  At other times, Carda would notice a problem in the reports and bring it to Fluglevand's attention.  Carda occasionally operated a bulldozer or other heavy equipment, and he once built a silt fence.  He sometimes picked up parts or ran other errands.  He was responsible for giving new employees drug tests and for notifying management if a test came back positive for illegal drugs.

Carda testified that he was responsible for submitting billing information to Johnson, the DOT representative.  Johnson would "stop in and just ask for the printout of the worksheet from Excel . . .  and if he had any questions he'd come back."  Carda also assisted in making payments to Hoffman, the subcontractor hired to haul rock for the project.  Payment was based on the weight of truckloads of rock.  The Oftedal scale operator would make scale tickets that listed the weight of the material.  Carda was responsible for checking the scale tickets to see if the operator had indicated that he had made a mistake.  If there was a dispute with Hoffman, Carda would show them where an error had been made on its scale ticket.

Carda was instructed to submit a time card for the hours that he worked each week.  He was told to enter 40 hours on his timecard even if he worked more than 40 hours per week, because he was paid based on an annual salary.  Carda testified that he worked more than 40 hours per week every week that he was employed by Oftedal.  Carda never requested overtime pay and did not complain that he was working too many hours until early August of 2003.  At this time he told Fluglevand that he was not happy with the long hours and would be resigning in two weeks.  A co-worker convinced him to keep his job.  Carda was laid off on September 12, 2003.

Carda had been keeping his own records of the hours that he worked, and he had consulted an attorney about filing an FLSA suit against Oftedal.  Before he left, he copied several hundred timesheets and employment records of other Oftedal employees.  He also used a digital camera that belonged to Oftedal to collect other evidence.  On April 14, 2004, Carda sued Oftedal, seeking a judgment for overtime compensation, liquidated damages, and an award of costs and attorney's fees.  Carda now moves for summary judgment on several issues.  Oftedal opposes the motion for summary judgment and moves to reconsider evidentiary rulings.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

8

**DISCUSSION**

**1.    Coverage under FLSA**

An employee becomes subject to the FLSA overtime requirements if the employee's work is considered to be "engaged in commerce" or "in the production of goods for commerce" or if all of an employer's employees are covered under enterprise coverage.  See 29 U.S.C. § 207(a)(1) and 29 U.S.C. § 203(s)(1).  Oftedal stipulates that Carda is individually covered for purposes of 29 U.S.C. § 207(a)(1) and that it is "engaged in commerce" or "in the production of goods for commerce" for purposes of that section.  This narrows the issue to whether Carda was an "exempt" employee under the Act. **2.**

**Executive Exemption**

The provisions of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity[.]"  29 U.S.C. § 213(a)(1).  Carda contends that he does not qualify as an "executive" for purposes of the FLSA.  The current regulations define the term "employee employed in a bona fide executive capacity" as any employee:

(a)    Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b)    Who customarily and regularly directs the work of two or more other employees therein; and

(c)    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement and promotion or any other change of status of other employees will be given particular weight; and

9

      (d)      Who customarily and regularly exercises discretionary powers; and

      (e)      Who does not devote more than 20 percent . . . of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section[.]

29 C.F.R. § 541.1(a).[1]

To qualify for the executive exemption, the employer has the burden to prove that the employee customarily and regularly directs the work of two or more full-time employees.  Murray v. Stuckey's, Inc., 50 F.3d 564, 566 (8th Cir. 1995).  Carda states in Plaintiff's Statement of Undisputed Material Facts (PSUMF) that he did not customarily and regularly direct two or more other employees as part of his employment with Oftedal.  (Docket 117, ¶ 61).  Oftedal admits that Carda did not customarily and regularly direct two or more other employees as part of his employment in Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (DRPSUMF).  (Docket 129, ¶ 44).  Both parties agree that Carda did not regularly direct the activities of two or more other full-time employees.  Accordingly, as a matter of law, Carda does not fall under the executive exemption.  Thus, the remaining issues for

---

[1]This is the so-called "long test."  Employees who earn at least $250 per week are exempt executives if they meet the first two of these requirements, the so-called "short test."  29 C.F.R. § 541.1(f).  This "short test" applies here because Carda earned more than $250 per week.  It is noted that 29 C.F.R. § 541.1 has been modified slightly as of 2004, but there were no substantive changes that would affect this analysis.

trial are whether Carda is exempt from the FLSA under the "administrative" or "professional" exemptions.

**3.    Barratry**

Carda moves for summary judgment on Oftedal's barratry counterclaim. "Barratry is the assertion of a frivolous or malicious claim or defense or the filing of any document with malice or in bad faith by a party in a civil action." SDCL 20-9-6.1.  An action is frivolous  "when the proponent can present no rational argument based on the evidence or law in support of the claim." Citibank (S.D.), N.A. v. Hauff, 668 N.W.2d., 528, 537, (S.D. 2003) (internal quotations omitted).  A frivolous claim is a legal position so wholly without merit as to be absurd.  Id. (quotations omitted).

Carda has identified evidence of many facts in support of his underlying FLSA claim and his motions for partial summary judgment.  His evidence consists of sworn testimony by both parties and copies of Oftedal's wage policies and employee timecards.  Carda has cited relevant statutes and caselaw in support of his legal arguments.  Carda's FLSA claims and motions are not frivolous.  Furthermore, this court is unaware of any South Dakota decision finding that a party committed barratry.  But see Flugge v. Flugge, 681 N.W.2d 837, 846, 2004 (S.D. 2004) (awarding appellate attorney's fees of $3,000 in part because barratry claim was frivolous).

Oftedal contends that Carda's lawsuit was filed in bad faith because he copied evidence that would support his claim and spoke to an attorney while he was employed by Oftedal.  This is not relevant to whether Carda's lawsuit was filed in bad faith or whether his claims were frivolous.  Because Oftedal has not identified any material issues of fact regarding this counterclaim, Carda is entitled to summary judgment on the barratry claim.

**4.     Breach of Duty of Loyalty and Good Faith**

   **A.     Choice of Law**

Before addressing the substantive law, the court must determine whether the laws of Montana or South Dakota apply.  Oftedal contends that Montana law applies to the breach of duty of loyalty and good faith claim, while Carda argues that South Dakota law applies.  In diversity cases, federal courts apply the choice of law rules of the forum state to determine which state's substantive law applies.  Retail Associates, Inc. v. Macy's East, Inc., 245 F.3d 694, 697 (8th Cir. 2001).  Thus, South Dakota's choice of law rules will be applied.

      **1.     Breach of good faith**

Under South Dakota law, "before a party can sue for breach of good faith, a contract must be proven.  Contract law does not recognize a breach of good faith separate from a contract."  Garrett v. BankWest, Inc., 459 N.W.2d 833, 843 (S.D. 1990).  Thus, the court will apply the South Dakota choice of

12

law provisions that govern contracts.  Under South Dakota's choice of law

provisions:

> A contract must be construed in accordance with the law of the
> place where made unless it is shown that it was the intention of
> the parties to be bound by the law of some other place.  The test
> of the place of a contract is the place where the last act is done by
> either of the parties which is necessary to complete the contract
> and give it validity.

Briggs v. United Services Life Ins. Co., 117 N.W.2d 804, 807 (S.D. 1962)

(internal citations omitted).  Here, neither party contends that the contract

contained a choice of laws provision.  The last act done was the acceptance of

the offer by Carda in South Dakota.  Thus, South Dakota law governs the

breach of good faith claim.

### 2.     Duty of Loyalty

The South Dakota Supreme Court has recognized the breach of duty of

loyalty to be a tort claim.  Setliff v. Stewart, 694 N.W.2d 859, 867 (S.D. 2005).

South Dakota follows the most significant relationship test in multi-state tort

claims, which is derived from the Restatement (Second) of Conflict of Laws

§§ 6 and 145 (1971).  Chambers v. Dakotah Charter, Inc. 488 N.W.2d 63, 67

(S.D. 1992).  Under § 145, the court considers the place where the injury

occurred, the place where the conduct causing the injury occurred, the place

of incorporation and business of the parties, and the place where the

relationship between the parties is centered.  Id. at 68 (citing Restatement

13

(Second) supra § 145.  These contacts are evaluated according to their relative importance to each case.  Burhenn v. Dennis Supply Co., 685 N.W.2d 778, 784 (S.D. 2004).

Carda was working on the Strawberry Hill construction project near Deadwood, South Dakota.  Any acts of alleged disloyalty by Carda toward Oftedal occurred in South Dakota.  Oftedal is incorporated in and has its principal office and places of business in Montana.  Carda was a resident of South Dakota at all times relevant to this litigation.  The place where the relationship between the parties is centered is South Dakota.  Because the most significant relationships are centered in South Dakota, the court finds that South Dakota law applies to the breach of duty of loyalty cause of action.

**B.      Substantive Law**

Oftedal contends that Carda violated the implied covenant of good faith and fair dealing.  The South Dakota Supreme Court has held, however, that the implied covenant of good faith and fair dealing does not apply to the employment-at-will context.  Breen v. Dakota Gear & Joint Co., Inc., 433 N.W.2d 221, 224 (S.D. 1988).  Even if it did, Carda's actions do not rise to the level of actionable conduct.  "The term 'good faith' generally indicates an absence of bad faith on behalf of a party to a contract."  Mahan v. Avera St. Luke's, 621 N.W.2d 150, 159, 2001 SD 9 (S.D. 2001).  Bad faith behavior is implicitly unreasonable, "therefore a breach of the covenant of good faith

14

cannot exist when the parties act in a reasonable manner."  Id. at 160.

Depriving the other party of rights under the contract, preventing the other

party from receiving the benefits of the bargain, or interfering in the other

party's performance of the contract are examples of bad faith.  Id.  While this

list is not exhaustive, Oftedal does not allege that Carda did any of these

things.

Oftedal also alleges that Carda breached his duty of loyalty under South

Dakota law.  SDCL 60-2-13 sets forth the duty of loyalty an employee owes his

employer as determined by the South Dakota legislature:  "An employee who

has any business to transact on his own account, similar to that entrusted to

him by his employer, must always give the latter the preference."   Employees

violate their duty of loyalty to their employer when they compete against their

employer.  See Paint Brush Corp., Parts Brush Div. v. Neu, 599 N.W.2d 384,

390-91 (S.D. 1999) (evidence that employee copied secret manufacturing

process and founded a paint brush company to compete with employer while

he was still employed by employer sufficient to survive summary judgment).

An employee, however, "is entitled to make 'arrangements' for some new

employment by a competitor and should be given some latitude in this

regard."  Setliff v. Akins, 616 N.W.2d 878, 886 (S.D. 2000).  While an employee

may plan and take limited steps to begin competing with his employer, an

employee may not secretly communicate with, solicit, and/or hire employees

or customers of his employer for such rival business before the end of his employment.  Id.

Oftedal puts forth no evidence that Carda competed against it in the highway construction business or transacted business on his own account while an employee.  Oftedal references no evidence that Carda solicited Oftedal employees to go to work for a competitor.  (DRPSUMF, ¶ 39).  Oftedal admits that Carda was not working for one of its competitors while Carda was employed with Oftedal.  (DRPSUMF, ¶ 40).   Furthermore, Oftedal puts forth no evidence that Carda used the copies of the records he made for any purpose other than for his FLSA claim against Oftedal.  (DRPSUMF, ¶ 41).

Restatement (Second) of Agency § 395 also recognizes a duty on the part of an employee to his employer

> not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal, on his own account or on behalf of another, although such information does not relate to the transaction in which he is then employed, unless the information is a matter of general knowledge.

Here, however, Oftedal cites no evidence that Carda used any information he obtained while employed with Oftedal to compete with Oftedal.  (DRPSUMF, ¶ 38).   Oftedal complains that Carda left employment on Friday and went to work with its competitor the following Monday and thus concludes that Carda

16

must have negotiated for employment with Oftedal's competitor while being employed by Oftedal.  The law, however, does not preclude an employee from making arrangements for new employment with a competitor while still employed.

As evidence of breach of the duty of loyalty and bad faith, Oftedal complains that:  (1) Carda and another employee, Mike Berry, met with an attorney about their FLSA claim while they were still employed by Oftedal; (2) Carda surreptitiously copied his and Berry's time cards and furnished them to counsel; (3) Carda photographed timecards using Oftedal's digital camera and burned those time cards onto a CD from the camera; (4) Carda asked another Oftedal employee to be a witness regarding his FLSA claim; (5) Carda did not request overtime pay from Oftedal while he was employed by Oftedal; (6) Carda asked for a reference from his supervisor; and (7) after he was laid off by the competitor, Carda drew unemployment compensation against Oftedal's account for a four-month time period.

Some of Carda's actions about which Oftedal complains about are protected by federal law and cannot be considered unreasonable.  For example, federal law permits Carda to file an FLSA claim and encourage other Oftedal employees to join the suit.  See 29 U.S.C. § 215(a)(3) (prohibiting retaliation against any employee who "instituted or caused to be instituted any proceeding under or related to this chapter.")  An employee is not barred

under the FLSA from receiving overtime compensation by his failure to demand such compensation during his employment.  George Lawley & Son Corp. v. South, 140 F.2d 439, 442 (1st Cir. 1944).  Copying payroll records might not be protected by federal law, but the information would have been discoverable pursuant to Fed. R. Civ. P. 26(b)(1).  Carda's document copying does not rise to the level of unreasonable behavior cited in Mahan.  See 621 N.W.2d at 160.  Furthermore, South Dakota state law governs the unemployment account that will be charged when an employee is laid off from employment.  SDCL 61-5-28.

After considering all the evidence in the light most favorable to Oftedal, the court finds that no material questions of fact exist on Oftedal's counterclaim for breach of the duty of good faith and loyalty.  But even if Oftedal had sufficient evidence to survive a motion for summary judgment on this state-law claim, Carda would be entitled to summary judgment on the claim because the claim violates the FLSA and the Supremacy Clause of the United States Constitution.

An employee may not waive his or her right to overtime pay under the FLSA.  Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740, 101 S. Ct. 1437, 1444-45, 67 L. Ed. 2d 641  (U.S. 1981).

> The Fair Labor Standards Act was not designed to codify or
> perpetuate [industry] customs and contracts . . . Congress
> intended, instead, to achieve a uniform national policy of

18

> guaranteeing compensation for all work or employment engaged in
> by employees covered by the Act.  Any custom or contract falling
> short of that basic policy . . . cannot be utilized to deprive
> employees of their statutory rights.

Id. at 741.  In fact, an employee's "right to recover [under the FLSA] would not be barred by his failure during his employment to demand compensation for his overtime." George Lawley, 140 F.2d at 442.

In Lyle v. Food Lion, Inc., 954 F.2d 984 (4th Cir. 1991), the Fourth Circuit Court of Appeals upheld the district court judgment in favor of the plaintiff-employees, and affirmed the dismissal of the defendant's counterclaim for breach of contractual and fiduciary duties.  In response to a plaintiff's overtime claims, Food Lion sought indemnity from a manager who had worked "off the clock" and permitted another employee to do the same.  Id. at 986. The district court properly dismissed the counterclaim because the FLSA would not allow the defendant to indemnify itself for its own violations of the Act.  Id. at 987.  This would have violated the Supremacy Clause of the United States Constitution and undermined employer's incentives to comply with the FLSA.  Id. (citing LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir. 1986)).  Similarly, a state law counterclaim against Carda for filing this FLSA lawsuit, failing to complain about the lack of overtime pay, or working without overtime pay despite knowledge of federal employment laws would raise Supremacy Clause issues and undermine the basic goals of the FLSA. See id.

Accordingly, the court finds no genuine issues of material fact as to Oftedal's breach of loyalty and good faith counterclaims and grants Carda's motion for summary judgment on these counterclaims.

**5.    Oftedal's Motion to Reconsider the Order to Compel Requests for Admissions and Attorney's Fees**

The court has reviewed its earlier Order Granting Plaintiff's Motion to Compel Request for Admissions and for Attorney's Fees and Costs in light of the objections raised by Oftedal in its motion for reconsideration. After careful consideration, the motion to reconsider is denied.  Oftedal's response to the Request for Admissions is due by **September 3, 2005**.

**6.    Oftedal's Motion to Reconsider the Exclusion of Evidence of How Carda Obtained Work Records**

While Carda worked for Oftedal, he secretly copied computer records and paper files that support his claim that Oftedal should have paid him overtime.  The court granted Carda's motion to exclude evidence related to how he obtained the records, after finding it is irrelevant under Fed. R. Evid. 401.  Oftedal now moves this court to reconsider exclusion of the evidence that Carda secretly copied employment records.

As noted above, Oftedal's breach of duty of loyalty and good faith claim is dismissed.  In its motion to reconsider, Oftedal does not cite any evidence suggesting Carda formed a new company or lured employees to a competitor's company, or anything else that would support its breach of duty of loyalty

20

claim.  Nor does it cite any binding caselaw that supports its claim that copying company documents to support a FLSA lawsuit violates the duty of loyalty under South Dakota law.  Instead, Oftedal repeats the same argument it has made in several filings with this court, *i.e.*, that Carda's copying of employment records somehow precludes him from filing suit to enforce the overtime provisions of the FLSA.  The court finds that evidence as to how Carda obtained work records is still irrelevant to any issue in this case. Furthermore, if the evidence has some limited probative value, the unfair prejudice to Carda outweighs that limited probative value.  The motion to reconsider is denied.

Accordingly, it is hereby

ORDERED that Carda's renewed motions for summary judgment (Docket 113, 114, and 115) are granted.

IT IS FURTHER ORDERED that Oftedal's motions for reconsideration (Docket 104 and 105) are denied.

IT IS FURTHER ORDERED that Oftedal's response to the Request for Admissions is due by **September 3, 2005**.

Dated August 26, 2005

BY THE COURT:

/s/ **Karen E. Schreier**
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

21