UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LEE CARDA, | ) | CIV. 04-5036-KES |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| E.H. OFTEDAL & SONS, INC., a | ) | ORDER DENYING |
| Montana corporation; JOHN DOE | ) | DEFENDANT'S MOTION TO |
| No. 1; Officer; JOE DOE No. 2, | ) | DISMISS, DISQUALIFY, AND |
| Officer; JOHN DOE No. 3, Officer; | ) | IMPOSE SANCTIONS |
| JOHN DOE No. 4, Officer; JOHN | ) | |
| DOE No. 5, Officer; JOHN DOE | ) | |
| No. 6, Project Manager; JOHN DOE | ) | |
| No. 7, Project Manager; JOHN DOE | ) | |
| No. 8, Superintendent; and  JOHN | ) | |
| DOE No. 9, Superintendent; | ) | |
| | ) | |
|     Defendants. | ) | |

On July 13, 2005, defendant E.H. Oftedal & Sons, Inc., (Oftedal) moved to dismiss the case, disqualify plaintiff's attorneys Jason M. Smiley and Donald P. Knudsen, disqualify plaintiff's law firm Gunderson, Palmer, Goodsell & Nelson, LLP, and impose sanctions on plaintiff's counsel.  Oftedal alleges that counsel for plaintiff violated the South Dakota Rules of Professional Conduct by colluding with Carda to secretly gather evidence for this case while Carda was still employed by Oftedal.  Carda opposes the

motion on its merits and because it was untimely. Oftedal's motion to dismiss, disqualify, and impose sanctions is denied.

## BACKGROUND

Oftedal is a road construction company based in Miles City, Montana. Oftedal offered Carda a field engineer position in December of 2001, while he was an industrial management graduate student at South Dakota State University. Carda was told that he would have to work overtime occasionally, and would not receive overtime pay. Carda accepted the job offer and began working for Oftedal on May 20, 2002.

Carda was instructed to submit a time card for the hours that he worked each week. He was told to enter 40 hours on his timecard even if he worked more than 40 hours per week, because he was paid based on an annual salary. Carda claims that he worked more than 40 hours per week every week that he was employed by Oftedal. Carda never requested overtime pay and did not complain that he was working too many hours until early August of 2003. At this time he told Hal Fluglevand, president of Oftedal, that he was not happy with the long hours and would be resigning in two weeks. A co-worker convinced him to keep his job. Carda was laid off on September 12, 2003.

Carda had been keeping his own records of the hours that he worked, and he had consulted an attorney about filing a Fair Labor Standards Act (FLSA) suit against Oftedal. Before he left his employment with Oftedal, Carda copied several hundred timesheets and employment records of other Oftedal employees. He also used a digital camera that belonged to Oftedal to copy other Oftedal records.

## DISCUSSION

A motion to disqualify should be made within a reasonable time after a party discovers the facts which lead to the motion. Central Milk Producers Co-op. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978). "This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." Id. During a deposition on July 19, 2004, Carda told Oftedal's attorney Ron Schmidt that he had copied the records and discussed the evidence with Knudsen. (Carda Dep. at 81-84). Schmidt waited until July 13, 2005, to move to disqualify Carda's attorneys. This case is scheduled for trial to commence on September 27, 2005.

The Eighth Circuit has not endorsed a particular test to determine when the grounds for disqualification have been waived, but the district court for the Eastern District of Missouri has adopted the following five-part test:

(1) the length of the delay in bringing the motion to disqualify;
(2) when the movant learned of the conflict;
(3) whether the movant was represented by counsel during the delay;
(4) why the delay occurred; and
(5) whether the disqualification would result in prejudice to the non-moving party.

Giessal v. Moore Medical Corp., 92 F. Supp. 2d 945, 946 (E.D. Mo. 2000). Oftedal waited almost one year after learning of the facts at issue in this motion to disqualify. Oftedal was represented by counsel during the delay, and it has not articulated a reason for the delay. Because Oftedal delayed filing the motion until just two and a half months before the trial, Carda would be prejudiced if his counsel were disqualified. Finding alternate counsel at this stage of the proceedings would be difficult and expensive to Carda and would result in further delay of the trial. After considering all five factors, the court finds that Oftedal has waived its right seek disqualification.

Oftedal's motion to disqualify is also denied on the merits. Carda testified in his deposition that he and a co-worker, Mike Berry, met with attorney Don Knudsen at a restaurant in the spring of 2003, around April or

May. (Carda Dep. at 81). He met with Knudsen again on July 11, 2003.[1] Id. Carda copied Oftedal's confidential employment records and gave them to Knudsen on July 14, 2003. Oftedal contends that Carda copied the documents and used company property to collect evidence at the direction of his attorneys, or that his attorneys ratified Carda's conduct by using the evidence he collected. "It is Oftedal's position that both Carda's counsel, and Carda acting in concert violated several ethical and confidentiality obligations," including Carda's duties of confidence, good faith, loyalty, and duty not to place his own interests above his employer's interests. Docket 134 at 15. Oftedal further alleges that Carda and his attorneys violated these duties by having Carda keep a "secret" record of the hours he worked, continuing to work for Oftedal so that he could build up the damages he would be owed in this lawsuit, recruiting witnesses for the case, and applying for a job with a competitor while he worked for Oftedal.

    The court has already considered and rejected most of these arguments in its order granting summary judgment on Oftedal's breach of the duty of loyalty and good faith counterclaim, and these arguments fail here for the same reasons. Docket 146. An employee may not waive his or her right to overtime pay under the FLSA, and it is Oftedal's responsibility to comply with

---

[1] Knudsen's affidavit reflects that the initial consultation with Carda occurred on July 11, 2003.

federal labor law.  See Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740, 101 S. Ct. 1437, 1444-45, 67 L. Ed. 2d 641 (U.S. 1981). Dismissing the case or disqualifying plaintiff's counsel based on alleged violations of the state law duty of loyalty would violate the Supremacy Clause of the United States Constitution and undermine enforcement of the FLSA. See LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir. 1986).

Oftedal contends that counsel for Carda violated ethical standards by asking him to collect evidence outside the normal discovery procedures.  A lawyer may not use methods of obtaining evidence that violate the legal rights of a third person.  South Dakota Rules of Prof'l Conduct R. 4.4(a).  "Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the attorney's oath of office or the Rules of Professional Conduct . . . shall constitute misconduct and shall be grounds for discipline." SDCL 16-19-32.  Knudsen testified under oath that he did not ask Carda to copy the records.  (Knudsen Aff. ¶ 3).  Carda testified that he started keeping track of his own hours before he talked to an attorney.  (Carda Dep. at 90).  He also testified that nobody told him to photocopy the time cards and that he decided to copy them because he was afraid the records would disappear. Id. at 81.  Oftedal has no direct evidence that Knudsen directed Carda's activities. Both Carda and Knudsen testified that Knudson did not ask him to gather evidence.  Thus, the court finds that Knudsen did not direct Carda's activities.

Because Carda's attorneys did not direct his activities, his attorneys cannot be liable for any alleged violation of the South Dakota Rules of Professional Conduct related to the copying of Oftedal's records. Accordingly, the court finds that Knudsen and Smiley did not violate Rule 4.4a of the Rules of Professional Conduct.

Oftedal relies heavily on the unpublished opinion of the district court in Schubot v. Rochester Methodist Hosp., Civ. 3-94-942 (D. Minn. 1996), as support for dismissal of this case. In Schubot, the plaintiff stole his original medical records from Mayo Clinic and provided them to his counsel. Plaintiff and his counsel then consistently used the fact that the records were missing as a bargaining chip against defendants. Plaintiff's counsel then lied to defendants stating that all the medical records in his possession had been sent to defendants when plaintiff in fact concealed and retained the stolen records. In the case at bar, Carda did not steal Oftedal's original records. He made a copy for himself and left the originals with Oftedal. Carda informed Oftedal early on in this litigation that he had a copy of the records and provided his copy of the records to Oftedal. There is no evidence before the court that Carda and his counsel ever claimed that missing records would be beneficial to them or that they lied to Oftedal while retaining the original stolen records. Thus, the extraordinary remedy of dismissal is not appropriate under the facts of this case.

Oftedal also alleges that Carda violated Oftedal's rights by contacting Oftedal employees to solicit testimony or join the lawsuit, and that this violates Rule 4.2 of the South Dakota Rules of Professional Conduct. Docket 134 at 19. "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." South Dakota Rules of Prof'l Conduct R. 4.2. The rule does not apply to Carda because he is not an attorney representing a client and there is no evidence that either Knudsen or Smiley communicated with a represented person. Comment 4 to Rule 4.2 clarifies that Rule 4.2 allows parties to a matter to communicate directly with each other and does not prohibit lawyers from advising a client concerning a communication that the client is legally entitled to make. Thus, Carda's actions do not violate Rule 4.2.

Additionally, there is no evidence that Carda's attorneys asked him to find witnesses or other potential plaintiffs. Federal law permits Carda to file an FLSA claim and encourage other Oftedal employees to join the suit. See 29 U.S.C. § 215(a)(3) (prohibiting retaliation against any employee who "instituted or caused to be instituted any proceeding under or related to this chapter.") Finally, there is no evidence that Oftedal was represented by counsel on this matter at the time that Carda contacted Oftedal's employees. Comment 4 to

Rule 4.2 provides that "This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation." There is no evidence that Oftedal was represented by counsel with regard to this FLSA claim when Knudsen met with Oftedal's employee Berry. Accordingly, there was no violation of Rule 4.2.

Finally, the court notes that even if counsel for Carda had violated legal ethics rules, disqualification of counsel for violations of the Rules of Professional Conduct is not automatic. Grahams Service Inc. v. Teamsters Local 975, 700 F.2d 420, 423 (8th Cir. 1982). The decision whether to disqualify is in the discretion of the court. Id. "Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny." Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir. 1996). Courts generally will not disqualify counsel unless there is a significant violation of professional ethics. See, e.g., Jenkins v. Missouri, 931 F.2d 470, 484 (8th Cir. 1991) (affirming disqualification of firm representing group challenging court-ordered property taxes for school desegregation program, while also serving as counsel of record for a group of children attending a school funded by the taxes, because continued representation of both parties was a "genuine conflict of interest.") See also United States v. Tierney, 947 F.2d 854, 864-65 (8th Cir. 1991) (disqualification of prosecutor in

tax case whose husband represented the insurance company seeking a declaratory judgment against defendant was unnecessary, because conflict of interest was too attenuated).  In this case, there is no allegation of any misconduct approaching the severity of the genuine conflict of interest leading to the disqualification of counsel in Jenkins.

When considering a motion to disqualify counsel, the Eighth Circuit Court of Appeals considered the following factors: the plaintiff's interest in being represented by the attorney of his choice, the opposing party's interest in a trial free from prejudice due to the disclosure of confidential information, and the public interest in the scrupulous administration of justice.  Meat Price Investigators Ass'n v. Spencer Foods, Inc., 572 F.2d 163, 165 (8th Cir. 1978).  The Eighth Circuit found in Meat Price that although the attorney "overstepped the bounds of responsible professional conduct," there was insufficient evidence of prejudice to disqualify counsel.  Id.  In the case at bar, the alleged misconduct is much more benign because the timesheets and employment records Carda and his attorneys obtained outside the normal discovery process were not confidential and would have been discovered anyway.

"Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the

discovery of admissible evidence." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). Given the relevance of the employment records to a FLSA claim, and the broad interpretation of the discovery rules in federal court, the evidence Carda copied on his own would have been disclosed in discovery. Oftedal, therefore, cannot claim that it was prejudiced or that Carda obtained an unfair advantage by copying the files on his own. As noted above, even if there had been a violation, disqualification would be unwarranted because Oftedal waited too long to raise the issue and because the alleged violations were not severe enough to warrant disqualification.

Accordingly, it is hereby

ORDERED that Oftedal's motion to dismiss, disqualify, and impose sanctions (Docket 133) is denied.

Dated August 30, 2005

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE